UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER A. NEFF,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>                Defendant. | CASE NO. 13-cv-05209 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United States Magistrate Judge, ECF No. 4). This matter has been fully briefed (*see* ECF Nos. 13, 14, 15).

After considering and reviewing the record, the Court finds that the ALJ did not commit harmful error when evaluating plaintiff's credibility, or when reviewing the

medical evidence at step two of the sequential disability evaluation process regarding plaintiff's epicondylitis and sinusitis with alleged associated headaches. The ALJ cited, among other things, the objective medical evidence and plaintiff's inconsistent statements. The ALJ's rejection, in part, of plaintiff's pain complaints, and her determination regarding plaintiff's RFC, are supported by substantial evidence in the record as a whole.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, CHRISTOPHER A. NEFF, was born in 1976 and was 29 years old on the alleged date of disability onset of January 14, 2005 (*see* Tr. 163-68). Plaintiff completed the twelfth grade but did not complete all requirements and has obtained his GED (Tr. 57). Plaintiff has worked as a landscaper, tow truck driver, meter technician and spray technician (Tr. 58-61).

Plaintiff has at least the severe impairments of "residuals from SLAP repair of the left shoulder; lumbar spine strain; L5 nerve root impingement as of 2011; bipolar disorder; attention deficit hyperactivity disorder (ADHD); anxiety disorder; and marijuana abuse (20 CFR 404.1520(c) and 416.920(c))" (Tr. 21). Plaintiff questions this finding, and contends that his elbow condition and sinusitis/headaches also were severe impairments. At the time of the hearing, plaintiff was living alone in his own home (Tr. 49).

//

//

PROCEDURAL HISTORY

On June 4, 2009, plaintiff filed an application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income benefits ("SSI") pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 163-168). The applications were denied initially and following reconsideration (Tr. 93-100). Plaintiff's requested hearing was held before Administrative Law Judge Cheri Filion ("the ALJ") on May 26, 2011 (*see* Tr. 44-92). On November 18, 2011, the ALJ issued a written decision in which she concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.15-43).

On January 25, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in March, 2013 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on May 31, 2013 (*see* ECF Nos. 10, 11).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred at step two by finding that plaintiff's right elbow condition and sinus problems with associated headaches were not severe; (2) Whether or not the ALJ erred by failing to properly consider the plaintiff's pain complaints pursuant to SSR 96-7; (3) Whether or not the ALJ erred by not complying with SSR 96-8p when assessing the plaintiff's RFC; and (4) Whether or not the ALJ erred by determining plaintiff was not credible (*see* ECF No. 13, pp. 1-2, 3).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). In the context of social security appeals,

legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

## DISCUSSION

**(1) Whether or not the ALJ erred by determining plaintiff was not credible.**

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

Cir. 1996) (citation omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d at 1284 (citations omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, *supra*, 80 F.3d at 1281-82 (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms based solely on a lack of objective medical evidence to corroborate fully the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84 (*citing Dodrill, supra*, 12 F.3d at 917); *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, as discussed below, the Court concludes that the ALJ offered clear and convincing reasons for failing to credit fully plaintiff's testimony. Plaintiff repeatedly

demonstrated his willingness to deceive, including plaintiff's work "under the table," as well as his illegal marijuana growing, and the failure to report income from these activities. Also much of plaintiff's testimony was not supported by the medical records and, even more troubling, were the direct inconsistencies between his testimony and his medical record. Furthermore, plaintiff's activities of daily living, including participation on a softball team, installation of a pool heater, and work "in a duty and dirty environment as a construction worker" were activities inconsistent with alleged level of incapacity. Finally, as noted by the ALJ; plaintiff's "own admission made in February 2008 that he was 'ready to work and comply with activities,'" was inconsistent with his claimed disability. There were other cited instances of plaintiff's lack of credibility, including statements about his drug use, the reason he ceased his schoolwork, and others (Tr. 20-21, 28-32), but the Court will discuss only some of these reasons herein. Suffice it to say, there is an abundance of evidence supporting the ALJ's credibility determination. Although plaintiff disputes *some* of the ALJ's reasoning and *some* of her factual credibility findings, these contentions rise, at most, to the level of alternative interpretations of the evidence, which, even if accurate, do not deprive the ALJ's interpretation of substantial support in the record. It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601). The relevant credibility findings of the ALJ

are supported by substantial evidence in the record, and there is no harmful error in the ALJ's credibility determination.

The ALJ included the following in her written decision:

> A felony conviction established that he has worked under the table growing and selling marijuana for which he was arrested and convicted of manufacture with intent to deliver. He also has been working "under the table" doing work installing a swimming pool heater and other construction work (internal citations to Exhibits 12F, p. 3 [Tr. 424] and 32F, p. 15 [Tr. 710]). . . . . the claimant's credibility is significantly eroded by this unreported legal and illegal income.

(Tr. 20-21).

Plaintiff questions the unreported income implied by the ALJ, however, the record demonstrates, and plaintiff has not rebutted adequately, that on July 30, 2009, plaintiff reported that he "works with pesticides as well as construction, doing sheet rock work" (*see* Tr. 424). Similarly, on June 17, 2010, plaintiff apparently reported spending "all day installing a swimming pool heater and being exposed to some strong odors" (*see* Tr. 710). In addition, although plaintiff contends that he was doing little to help his grandfather, such as heating up a dinner, the ALJ's inference to the contrary is supported by the indication in the record that plaintiff stated that "he has been working for his grandfather, 'it keeps me busy'" (Tr. 476). Although plaintiff provides alternative explanations for the statements relied on by the ALJ, the ALJ's logically-drawn inferences are based on substantial evidence in the record as a whole. Failure to report income is a valid credibility consideration, and the inference herein is supported by substantial evidence in the record as a whole. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (the ALJ may "draw inferences logically flowing from the evidence") (*citing Beane v.*

1  *Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D.
2  Cal. 1980)).

3        The ALJ also relied on inconsistent statements made by plaintiff when failing to
4  credit fully plaintiff's allegations. Arguably, this reason alone is clear and convincing
5  sufficiently to uphold the ALJ's credibility determination herein. Plaintiff's inconsistent
6  statements include his May 26, 2011 testimony that he stopped attending Pierce College
7  because of his pain (*see* Tr. 72), and his report (twice) in February, 2011 that he stopped
8  going to school because the Department of Vocational Rehabilitation had not purchased
9  him a computer (*see* Tr. 866; *see also* Tr. 877 ("Pt had problems with getting computer
10 for school and did not start last semester. He is working to be able to start now")).

11       Plaintiff's inconsistent statements also include his December, 2009 denial that he
12 had not used drugs in the recent twelve months (*see* Tr. 525) verses his July, 2009
13 admission that he uses marijuana occasionally (*see* Tr. 424) and his April, 2010
14 admission that he uses marijuana about three times a week (*see* Tr. 601). The ALJ also
15 noted plaintiff's statement inconsistent with his application that "he was 'ready to work
16 and comply with activities,' but there was not light duty work available at his place of
17 employment" (*see* Tr. 29, 414).

18       Based on the reasons stated and the relevant record, the Court concludes that the
19 ALJ's finding that plaintiff made inconsistent statements is a finding based on substantial
20 evidence in the record as a whole. The Court also concludes that this is a valid clear and
21 convincing reason supporting the ALJ's credibility determination.

24

The ALJ also relied on a lack of support from the objective medical evidence, as well as inconsistencies between the medical evidence and plaintiff's allegations, when failing to credit fully plaintiff's credibility and testimony (*see* Tr. 28-38). Although an ALJ may not rely solely on a lack of objective medical evidence when failing to credit fully a claimant's allegations, here, the ALJ provided numerous additional reasons, some of which are discussed herein. The ALJ's discussion of the objective medical evidence is lengthy and detailed (*see id.*). The Court will not detail it here, but finds that it provides additional support for the ALJ's credibility determination.

Based on the relevant record, the Court concludes that the ALJ provided numerous valid reasons to discount plaintiff's credibility. Although plaintiff questions the reasons supplied by the ALJ, the reasons were supported by substantial evidence in the record and one erroneous reason does not constitute harmful error when other valid reasons are supplied. *See Molina v. Astrue*, 674 F.3d 1104, 1117-1122 (9th Cir. 2012); *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009). The ALJ provided clear and convincing reasons for her failure to credit fully plaintiff's testimony.

### (2) Whether or not the ALJ erred by finding that plaintiff's right elbow condition and sinus problems with related headaches were not severe.

Step-two of the administration's evaluation process requires the ALJ to determine if the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether

1  [or not] each alone was sufficiently severe." *Smolen, supra*, 80 F.3d at 1290 (citations
2  omitted).
3      An impairment is "not severe" if it does not "significantly limit" the ability to
4  conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work
5  activities are "abilities and aptitudes necessary to do most jobs," including, for example,
6  "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
7  capacities for seeing, hearing and speaking; understanding, carrying out, and
8  remembering simple instructions; use of judgment; responding appropriately to
9  supervision, co-workers and usual work situations; and dealing with changes in a routine
10 work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments
11 can be found 'not severe' only if the evidence establishes a slight abnormality that has
12 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen, supra*, 80
13 F.3d at 1290 (*quoting* Social Security Ruling "SSR" 85-28) (*citing Yuckert v. Bowen*, 841
14 F.2d 303, 306 (9th Cir. 1988)).
15     According to Social Security Ruling 96-3b, "[a] determination that an individual's
16 impairment(s) is not severe requires a careful evaluation of the medical findings that
17 describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-
18 related symptoms), and an informed judgment about the limitations and restrictions the
19 impairments(s) and related symptom(s) impose on the individual's physical and mental
20 ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR
21 96-7p). If a claimant's impairments are "not severe enough to limit significantly the
22 claimant's ability to perform most jobs, by definition the impairment does not prevent the

claimant from engaging in any substantial gainful activity." *Bowen, supra*, 482 U.S. at 146. Regarding the establishment of a disability, it is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)) (footnote omitted).

a. Right elbow impairment

The ALJ found that plaintiff's right elbow impairment did not cause any significant interference with plaintiff's "ability to engage in basic work activities for any continuous period of at least twelve months" (*see* Tr. 21). She noted that in November, 2009, Kimberly Troy-Sales, ARNP, examined plaintiff and noted that he "exhibited range of motion with his bilateral elbows and knees with no joint deformity, heat, swelling, erythema, or effusion (internal citation to Exhibit 18F, p. 34)" (*see id.*). In the next paragraph of her decision, the ALJ includes the following:

> In April 2001, the claimant complained of right elbow pain. Spencer Coray, M.D., diagnosed lateral epicondylitis more commonly known as tennis elbow (internal citation to Exhibit 38F, pp. 6-8). However, the records do not contain firm diagnoses of any knee or elbow impairment. Neither one of these two conditions meets the 12-month durational requirement for a severe impairment . . . . [and] are not "severe" within the meaning of the Act.

(Tr. 21).

First, the ALJ noted the diagnosis of epicondylitis in the sentence preceding her finding that there was no firm diagnosis of such impairment – an obvious inconsistency, and ostensibly committed error (*see id.*). However, the Court concludes that this is

harmless error because there is substantial evidence that this claimed impairment did not meet the durational requirement.

Although plaintiff contends that "ARNP Sales first started treating the plaintiff for what she suspected was tennis elbow in January of 2010," a review of the page cited by plaintiff actually reveals that ARNP-Sales apparently started treating plaintiff for this condition on December 27, 2010 – almost one year later (*see* Opening Brief, ECF No. 13, p. 6 (*citing* Tr. 790); Tr. 790-91). This interpretation is buttressed by Dr. Coray's observation on April 7, 2011 that "This started in December" (*see* Tr. 831). Similarly, Dr. Jeff Smith, M.D., noted plaintiff's musculoskeletal pain on January 4, 2010 as "location: right shoulder" (*see* Tr. 629). There is no mention of elbow pain at this January, 2010 medical visit (*see id.*). Therefore, the Court is not persuaded by plaintiff's argument that his tennis elbow is documented to exist in January, 2010; and plaintiff has not demonstrated that it was diagnosed or observed prior to December, 2010. Plaintiff contends that his right elbow continued to bother him through April, 2011 (*see id.*, p. 6). Hence, plaintiff has not met his burden to demonstrate that his elbow impairment existed for longer than twelve months, much less his burden to demonstrate that this impairment caused him significant work-related functional impairment for this long.

In fact, the records covering late 2009 and early 2010, the time frame the Court is directed to consider by plaintiff in his Opening Brief, include the following medical opinion on February 10, 2010:

> Patient still has a little bit of work to go on his strengthening, but has regained most of his motion and is for the most part *pain free*. I will

>     follow him up in two more months, which will make him at the six-
>     month mark. He has done extremely well.

(Tr. 577 (emphasis added)).

The Court also notes defendant's argument that even assuming "that the ALJ erred in assessing Plaintiff's tennis elbow at step two, Plaintiff has not shown any harm resulting from this alleged error" (*see* Response, ECF No. 14, pp. 12-13). Defendant persuasively argues as follows:

>     Here, despite Plaintiff's claim that his residual functional capacity
>     ["RFC"] may have been different if the ALJ had properly considered his
>     tennis elbow, there is no credible evidence that Plaintiff's tennis elbow
>     caused him limitations that were not accommodated by a limitation to
>     light work. Further, the ALJ ultimately concluded that Plaintiff could
>     return to his past relevant work as a meter reader as generally and
>     actually performed (internal citation to Tr. 36). Plaintiff has not shown
>     that his tennis elbow caused him limitations that would preclude him
>     from performing this job (internal citation to ECF No. 13, p. 6). Thus,
>     Plaintiff has not shown a substantial likelihood of prejudice.

(ECF No. 14, p. 13). Plaintiff offers no reply to defendant's argument (*see* ECF No. 15).

For the reasons stated, and based on the relevant record, the Court concludes that the ALJ did not commit any harmful error in her determination that plaintiff's epicondylitis was not a severe impairment within the meaning of the Act.

  b. Sinusitis, with alleged associated headaches

The ALJ noted that "a maxillofacial CT scan performed in March 2009 showed extensive mucosal thickening seen throughout the majority of the paranasal sinuses and moderate nasal deviation to the left, which [] has resulted in hyperplasia of the left middle nasal turbinate;" however the ALJ also noted that "other images of the paranasal sinuses

taken in the same month showed negative paranasal sinus series" (*see* Tr. 21). The ALJ's implication that plaintiff's sinusitis was not demonstrated conclusively by objective medical evidence in March, 2009 is supported by substantial evidence in the record as a whole (*see* Tr. 522). On March 3, 2009, Dr. Drew H. Deutsch, M.D. opined that there was a "negative paranasal sinus series," and the objective findings indicated "parasinuses appear normal" (*see id.*).

The ALJ noted that plaintiff reported sinusitis aggravated by chemical irritants and smoke in December, 2009 and that he was diagnosed with unspecified sinusitis by ARNP Troy-Sales (*see* Tr. 21). The ALJ then found that plaintiff's "sinusitis has been successfully repaired surgically in May 2010 and it does not cause more than minimal limitation in [his] ability to perform work-related activities," noting that in "July 2010, the claimant reported that his chief complaints of persisting headaches and chronic nasal discharge had largely resolved" (*id.*). The ALJ also noted that "Ernest Weymuller, M.D., refilled Mupirocin and recommended only a 10-day course of Augmentin" (*id.* (*citing* Exhibits 29F, pp. 8, 18, and 32F, p. 19)).

To dispute the ALJ's finding that plaintiff's sinusitis was not a severe impairment, plaintiff offers only his testimony that he still was having migraines two to three times a week even after the surgery, and his contemporaneous reports in the medical record that he was suffering from nasal discharge, intermittent headaches and tenderness and other symptoms related to sinusitis (*see* Opening Brief, ECF No. 13, pp. 4-5).

First, the Court notes that plaintiff offers only his testimony and his allegations in support of his argument that the ALJ's step two determination regarding severe sinusitis

and related headache was in error, and the Court has upheld the ALJ's findings regarding plaintiff's lack of credibility and her determination not to credit plaintiff's allegations in full, *see supra*, section 1.

Second, the Court notes the following persuasive argument by defendant:

> However, the credible evidence in the record does not show that Plaintiff's sinusitis caused any work-related limitations [footnote omitted]. Plaintiff complained of headaches (internal citation to Tr. 84), but the ALJ found that he was not credible (internal citation to Tr. 22-34). . . . . Finally, in December 2010, Plaintiff was seen for a complaint of sinusitis and received an antibiotic, but the doctors noted many "pertinent negatives," meaning typical symptoms associated with the condition that were not observed (internal citation to Tr. 796).

(Response, ECF No. 14, pp. 13-14; *see also* Tr. 775, 796).

Finally, and importantly, the Court notes the medical record from Dr. Ernest A. Weymuller, Jr., M.D., on July 7, 2010, in which Dr. Weymuller noted the following:

> Mr. Neff returns, having undergone endoscopic sinus surgery on May 28 of this year. He reports that his dominant chief complaints of persisting headaches and chronic nasal discharge have largely resolved, although he still has some discharge controlled by irrigations. He has been using Afrin ever since his surgery, and I immediately instructed him to discontinue Afrin.

(Tr. 714).

For the stated reasons, and based on the relevant record, the Court concludes that the ALJ's finding that plaintiff reported in July, 2010 "that his chief complaints of persisting headaches and chronic nasal discharge had largely resolved" is a finding supported by substantial evidence in the record as a whole. The Court also concludes that the ALJ's finding that plaintiff has not demonstrated that his sinusitis and his associated

headaches caused more than minimal effect on his ability to conduct work-related activities for at least twelve months is supported by substantial evidence in the record.

### (3) Whether or not the ALJ erred by failing to consider properly plaintiff's pain complaints pursuant to SSR 96-7.

Although plaintiff contends that the ALJ failed to account fully for plaintiff's allegations of pain, and implies that she did not explain adequately why his pain complaints did not result in a more limited RFC, the Court does not agree with plaintiff's contentions. As acknowledged by plaintiff, credibility is a crucial factor when analyzing claimants' pain complaints, and the ALJ had a very large amount of support from the record for her credibility determination, *see supra*, section 1. The Court also notes that despite plaintiff's allegations of disabling pain in January, 2010 (*see* ECF No. 13, p. 6 (*citing* Tr. 790)), the record includes the treatment provider's note that plaintiff "is for the most part pain-free" in December, 2009 (Tr. 577). A subsequent treatment note from February 10, 2010 indicates that plaintiff's "pain is well controlled" (*see id.*).

For the stated reasons and based on the record as a whole, the Court concludes that the ALJ did not err when evaluating plaintiff's pain complaints.

### (4) Whether or not the ALJ erred by not complying with SSR 96-8p when assessing the plaintiff's RFC.

The Court likewise is not convinced by plaintiff's argument that the ALJ erred in determining plaintiff's RFC because she allegedly did not consider plaintiff's sinus condition, elbow impairment; orchronic pain problems and headaches (*see* ECF No. 13, pp. 11-12). The Court already has considered these arguments and found them unpersuasive, *see supra* sections 1-3.

Similarly unpersuasive is plaintiff's conclusory argument that the ALJ erred in evaluating plaintiff's mental impairments and that "Clearly, the substantial evidence in the record as a whole shows the plaintiff's overall mental health limitations would be far more restricted, due to his missing work or being unable to complete a normal workday/workweek, his difficulty concentrating and persisting, and his inability to interact with coworkers and the public" (*see* ECF No. 13, p. 12).

Defendant responds that "the ALJ properly assigned little weight to Dr. [Mary] Lemberg's assessment because it was inconsistent with the record as a whole, including Plaintiff's activities of daily living" (ECF No. 14, p. 15 (*citing* Tr. 35)). Defendant also argues that

> Dr. Lemberg thought Plaintiff would have difficulty performing simple and repetitive tasks and could not complete a normal workday or workweek without some interruptions from his psychiatric conditions (internal citation to Tr. 544). However, contrary to these projected limitations, Plaintiff installed a pool heater (internal citation to Tr. 710), worked with pesticides, and did sheetrock work (internal citation to Tr. 414). These activities showed that Plaintiff could perform simple and repetitive tasks, if not more complex tasks, and were an adequate reason to discount Dr. Lemberg's opinion.

(ECF No. 14, p. 15).

The Court agrees with defendant's arguments and notes that plaintiff offers no argument in reply to them (*see* Reply, ECF No. 15). The ALJ's findings regarding plaintiff's mental health are supported by substantial evidence in the record, including her findings that his mental symptoms fluctuated depending on plaintiff's "various situational stressors" and that his "history of limited treatment, cancelled and missed treatment appointments, and poor compliance taking prescribed medication shows that the

claimant's symptoms are not sufficiently severe to require sustained treatment or medication" (*see* Tr. 31, 32; *see generally*, Tr. 30-33).

Plaintiff also failed to reply to the following persuasive argument by defendant:

> Plaintiff further argues that the ALJ erred by not accounting for the observations of Cory Hatfield, PA-C, and others at Community Health Care, who described Plaintiff's depressive symptoms [internal citation to ECF No. 13 at p. 12 (*citing* Tr. 469, 472, 629, 632, 635, 638, 640, 645, 765, 772, 778).] However, those treatment records do not reflect the treatment provider's observations. They reflect the symptoms that Plaintiff reported. For example, the treatment note dated April 8, 2009, includes the following:
>
>> The patient reports it is somewhat difficult to meet home, work, and social obligations . . . The symptoms are aggravated by conflict or stress at home or work . . . He is experiencing irritable mood, diminished interest or pleasure, fatigue or loss of energy and sleep disturbance (internal citation to Tr. 472).
>
> Because these records simply reflected Plaintiff's claimed symptoms and the ALJ found him not credible, the ALJ did not need to include these limitations in the residual functional capacity assessment.

(ECF No. 14, pp. 15-16). The Court agrees.

The Court concludes that the ALJ's decision is based on substantial evidence in the record as a whole and without harmful legal error.

## CONCLUSION

The ALJ relied on plaintiff's inconsistent statements and the objective medical evidence, among other factors, when failing to credit fully plaintiff's allegations. She also evaluated properly the medical evidence, including the step two determination regarding severe impairments and the RFC determination.

ORDER ON PLAINTIFF'S COMPLAINT - 19

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 24th day of March, 2014.

*[signature]*

J. Richard Creatura
United States Magistrate Judge